IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| OWNERS INSURANCE COMPANY,<br><br>    Plaintiff,<br>v.<br><br>NOEL GASORE,<br><br>    Defendant.<br><br>AGATHE NIYONSENGA and DAVID HENSHAW,<br><br>    Intervenor Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:22-cv-00211-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is Plaintiff's motion for summary judgment. ECF No. 29 ("Pl.'s Mot."). Plaintiff Owners Insurance Company ("Plaintiff" or "Owners") filed this action against Defendant Noel Gasore ("Defendant" or "Gasore") seeking a declaratory judgment that it owes no obligation to defend or indemnify Gasore in an underlying state court action for negligence. The plaintiffs in the underlying state court action, Agathe Niyonsenga and David Henshaw (collectively, "Intervenor Defendants"), intervened on behalf of Defendant to oppose Plaintiff's motion for summary judgment. Defendant is not represented by counsel in this action and has not filed an opposition to Plaintiff's motion. For the reasons set forth herein, Plaintiff's motion is **DENIED**.

## BACKGROUND

This action stems from a tort lawsuit filed in state court. There, Intervenor Defendants allege Gasore negligently caused a motor vehicle accident, resulting in injury to them. The

automobile driven by Gasore at the time was either purchased from or owned by Secured Car Brokers, LLC ("Secured"). Secured is insured by Owners, the plaintiff in this pending lawsuit.

Plaintiff is currently providing a defense to Gasore in the underlying state action, although it argues it has no duty to do so. Intervenor Defendants argue that Plaintiff does have a duty to defend and indemnify Gasore for any damages awarded against him in that action.

**I.    The Policy**

The relevant insurance policy ("the Policy") was issued by Owners to Secured with effective dates of March 1, 2015 to March 1, 2016. The Policy identifies "Secured Car Broker" as the insured and covers garage liability. ECF No. 29-2 ("Policy") at 3. The garage liability portion of the Policy provides two forms of coverage (1) "auto" and (2) "other than auto." *Id.* at 69-70. Under "auto" coverage, the Policy states that Owners

> will [] pay damages for bodily injury and property damage for which the insured becomes legally responsible because of or arising out of: (a) An auto . . . 1) Owned by you; or 2) Leased, hired or rented by you or on your behalf with your expressed permission. Such auto . . . must be: 1) Used in your garage business; or 2) Used in a business, other than your garage business, but not on a regular basis; or 3) Not used in any business.

*Id.* at 52. Under "auto" coverage, the Policy defines "insured" as (1) "You" (2) "Your Garage Customers" (3) "Any other person . . . using an auto . . . with your permission" and (4) "Any other person or organization, but only with respect to liability because of acts or omissions of an insured . . . ." *Id.* at 68-69. The Policy also defines "Your Garage Customers" as (1) "[a]ny person while using an auto owned maintained or used in your garage business" or (2) "[a]ny of your customers or any prospective buyer to whom an auto has been loaned or furnished by you." *Id.* at 46. The Policy's garage liability does not cover "[b]odily injury or property damage arising out of the

ownership, maintenance, operation, [or] use . . . of any auto, possession of which you have transferred to another under an agreement of sale." *Id.* at 62.

## II. The Tort Action

On April 23, 2015, Gasore sought to purchase a 2007 Audi A4 Convertible ("the vehicle") from Secured, a car dealership insured by Owners. Gasore was a first-time car buyer and had just received his Utah driver's license four months prior to the incident. Gasore, who has limited English-speaking capabilities, relied heavily on the Secured sales representative, Mike Hennessy, to interpret the sales contract. Gasore alleges that he told Hennessy he did not have insurance, but that Hennessy assured him that he would be covered under Secured's insurance for two days. After signing a contract of sale, Gasore drove the vehicle off the lot. A few hours later, he allegedly lost control on I-80, crossed the median, and struck another car head-on, resulting in serious injuries to Intervenor Defendants. Following the accident, police investigating the scene found a contract of sale for the vehicle that was not signed by Secured. ECF No. 42-2 ("Contract of Sale"). The space for "signature of seller" was left blank.

Intervenor Defendants brought suit against Gasore, Secured, and Hennessy in state court, seeking damages for negligence. Subsequently, Owners, who is not a party to the state court litigation, sued Gasore in federal court, seeking a declaratory judgment that it is not obligated to defend or indemnify Gasore in the state court action. Owners then moved for summary judgment. Intervenor Defendants intervened in this action to oppose Owners' motion.

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the

initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is material only if it might affect the outcome of the suit under the governing law. And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016).

Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When applying the summary-judgment standard, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). The court must grant summary judgment on a claim if the party bearing the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## ANALYSIS

Plaintiff moves for summary judgment, arguing that the Policy does not obligate it to defend Gasore in the state court action. Plaintiff also argues that, in determining whether it has a duty to defend, the court should not consider any extrinsic evidence offered by Intervenor Defendants outside of the Policy and complaints in the state court action.

Because the court requested briefing on the issue, it first addresses whether it should abstain under *Colorado River*. Concluding it should not, the court then turns to whether it may consider extrinsic evidence, including the unsigned contract of sale, in its duty to defend analysis. Finally, the court proceeds to the merits of Plaintiff's motion, whether Owners has a duty to defend Gasore under the Policy.

I.   COLORADO RIVER ABSTENTION

As an initial matter, the court requested briefing from the parties on whether it must abstain from exercising jurisdiction under the *Colorado River* doctrine. ECF No. 44. This was based on the notion that a state court denied summary judgment on Secured's liability, recognizing a dispute of fact as to who owned the vehicle at the time of the crash. And the issue of ownership impacts whether Gasore is insured under the policy.

In *Colorado River*, the Supreme Court held that federal courts may abstain from exercising jurisdiction where there are parallel proceedings in state court. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). But "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule[,]" and declining to exercise jurisdiction requires "exceptional circumstances." *Id.* at 813. Before determining whether exceptional circumstances exist, "a federal court must first determine whether the state and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). Here, Owners is not a party to the underlying state court action. And even though there are some overlapping issues, the declaratory judgment sought here is whether Owners must defend and indemnify Gasore, not whether Gasore or Secured is liable for Niyonsenga's and Henshaw's injuries. Therefore, the court concludes the proceedings are not parallel, and it should not abstain under *Colorado River.*

II.  THE "EIGHT CORNERS" RULE

Next, the court examines whether it may consider extrinsic evidence in its duty to defend analysis. In its reply, Plaintiff argues that the court should not, and that Owners' "duty to defend may arise only within the 'eight corners' of the [insurance] policy and the complaint . . . ." *See Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 737 (Utah

5

2011). If this court were to apply the "eight corners" rule, it could not consider the unsigned contract of sale because it was not alleged in either of the underlying complaints. *See* ECF Nos. 29-3, 29-4 ("Complaints").

> Application of the "eight corners" rule
>
> > depends on how the duty is described in the contract . . . when the terms of an insurance contract condition the duty to defend upon allegations contained on the face of the complaint, extrinsic evidence is irrelevant to . . . determin[e] . . . whether a duty to defend exists.

*Equine Assisted Growth*, 266 P.3d at 736 (internal quotation marks omitted). Conversely, "if coverage is premised on information not contained in the complaint," the court may consider extrinsic evidence to determine whether a duty to defend exists. *Id.* at 737.

Here, the Policy provides that Owners shall "settle or defend . . . any claim or suit, for damages covered by this insurance." Policy at 53. The Policy defines "suit" as "a civil proceeding in which damages because of bodily injury, property damage . . . to which this insurance applies are alleged." *Id.* Thus, the Policy obligates Owners to defend based on facts that "are alleged" in the relevant "suit." To interpret whether the Policy applies to Gasore, the court must consider whether allegations in the state civil proceeding give rise to damages covered by the insurance.

Notably, the Policy does not condition Owners' duty to defend on facts that "are alleged" in the complaint, as Plaintiff argues. Indeed, the provision itself refers to "a civil proceeding," not a complaint. And it is well settled under Utah law that, in interpreting insurance policies, "[a]n insured is entitled to the broadest protection he could have reasonably understood to be provided by the policy." *Fuller v. Finance*, 694 P.2d 1045, 1047 (Utah 1985). Here, a reasonable interpretation of the Policy is that it conditions the duty to defend on facts alleged in the lawsuit, not solely in the complaint.

Plaintiff argues that the term "alleged" constrains the court to only consider facts alleged in the complaint. Plaintiff points to *Owners Ins. Co. v. Hafen*, in which the court reviewed the same Owners policy provision and concluded that it triggered the "eight corners" rule because "[t]he Tenth Circuit, applying Utah law, has held that similar language in a policy did not depend on any proof of an objective fact, and that the eight-corners rule therefore applied." 2021 U.S. Dist. LEXIS 172656 (D. Utah 2021). But in considering the ordinary meaning of "alleged," the court notes that facts can be "alleged" outside of a complaint. *See Fuller*, 694 P.2d at 1047 (holding that, in insurance policy interpretation, "words are to be given their ordinary meaning"). Parties frequently allege facts throughout the course of litigation. Indeed, "a court cannot limit its analysis of the duty to defend to the face of the complaint when the plain language of the policy directs otherwise." *Equine Assisted Growth*, 266 P.3d at 738. Thus, the use of the word, "alleged," does not automatically limit the court's analysis to the complaint alone.

Further, this case is distinguishable from *Hafen*. The *Hafen* court's interpretation of the Policy was logical because the court was applying the "eight corners" rule in the context of a motion to dismiss.[1] The only facts alleged at that point were facts included in the complaint. But that interpretation makes less sense at this stage in the litigation. Here, the court not only has the benefit of a fully developed record, but the advantage of a summary judgment order from the state court on the issue of ownership. At this point, more has been alleged than what is contained in the initial complaints. Applying this rule in such a mechanical way would not only be impractical but

---

[1] The cases Plaintiff cites in its brief address a duty to defend on a motion to dismiss or a motion for judgment on the pleadings. *See Equine Assisted Growth*, 266 P.3d at 735; *Owners Ins. Co. v. Hafen*, 2021 U.S. Dist. LEXIS 172656 (D. Utah 2021); *Cincinnati Specialty Underwriters Ins. v. Red Rock 4 Wheelers*, 576 F. Supp. 3d 905 (D. Utah 2021).

misaligned with the motivations behind the "eight corners" rule. *See Am. Interstate Ins. Co. v. Coastal Transp. Co.*, 2008 U.S. Dist. LEXIS 127650 (W.D. Texas 2008) ("The original purpose of the eight-corners rule was to preclude an insurance company from refusing to defend an insured based on the lack of merit of the plaintiff's case."); *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009) ("This rule serves a salutary purpose: it prevents courts from conducting an intensive factual analysis at an early stage of the proceedings, which would only increase litigation costs and needlessly tax parties and courts before the underlying suit had barely begun."). Accordingly, the court declines to apply the "eight corners" rule. It will thus consider extrinsic evidence offered by Intervenor Defendants to determine the existence of a duty to defend, including the allegation that the contract of sale for the vehicle was never executed by Secured.

### III. PLAINTIFF'S DUTY TO DEFEND

Next, the court turns to the merits of Plaintiff's motion. Owners offers two arguments to support its position. First, Gasore is not an "insured" as defined by the Policy. Second, even if Gasore is insured, the type of action against Gasore is excluded from the Policy because possession of the vehicle was transferred pursuant to a contract of sale. Owners also argues that Gasore is not insured under its "other than auto" coverage because the injuries at issue in the state tort action arose from the use of an automobile. Because the court finds there is a dispute of fact as to whether Gasore is insured under the Policy's "auto" coverage, the court need not reach that issue. The court addresses the other two arguments below.

#### A. Whether Gasore is an Insured as Defined by the Policy

Plaintiff argues that Gasore does not qualify as an insured under the Policy. Under "auto" coverage, the Policy defines "insured" as (1) "You" (2) "Your Garage Customers" (3) "Any other

person . . . using an auto . . . with your permission" and (4) "Any other person or organization, but only with respect to liability because of acts or omissions of an insured . . . ." Policy at 68-69. The Policy then defines "Your Garage Customers" as (1) "[a]ny person while using an auto owned maintained or used in your garage business" or (2) "[a]ny of your customers or any prospective buyer to whom an auto has been loaned or furnished by you." *Id.* at 46. Plaintiff maintains that Gasore does not fit into any of these categories.

Gasore does not qualify for the first category. The Policy defines "You" as "the named insured," which is Secured. *Id.* at 51. But it is less clear whether Gasore falls into any of the latter categories. Intervenor Defendants argue that there is a dispute of fact as to whether Gasore ever completed the purchase of the vehicle, thus calling into question who owned the vehicle at the time of the crash. They point to the unsigned contract of sale that contains an express term that the "agreement shall not become binding until accepted by an Authorized Representative of the Dealership." Contract of Sale at 1. Intervenor Defendants contend that the unsigned contract is evidence that the vehicle sale transaction was never completed and therefore Secured continued to own the vehicle when Gasore allegedly caused the accident.

Indeed, the state court ruled that there were genuine disputes of material fact as to who owned the vehicle at the time of the accident. The court reasoned that "because the copy of the Motor Vehicle Contract of Sale found in the Audi's glovebox was not signed by Secured Car, it is reasonable to infer for purposes of summary judgment that the contract of sale - and hence transfer of title - was not final and that Secured Car was still the owner." ECF No. 42-11 ("State Court MSJ Order") at 6 (internal quotation marks omitted) (agreeing with and quoting a party's brief). Plaintiff responds that there is no dispute who owned the vehicle because Gasore gave Secured a check for the purchase price of the vehicle and took possession of it.

9

Under Utah law, "[f]ormation of a contract requires . . . a manifestation of mutual assent." *GeoMetWatch Corporation v. Utah State* University, 538 P.3d 933, 939 (Utah Ct. App. 2023). And "[a] signature is perhaps the most common method by which a party can exhibit assent to the terms of a contract." *Id.* But it is not the only way to manifest assent.

> It is fundamental contract law that the parties may become bound by the terms of a contract even though they did not sign the contract, and this occurs where the parties, through words or actions, have otherwise indicated their acceptance of the contract, or led the other party to so believe that they have accepted the contract.

*Id.* Here, the question remains as to whether Secured manifested assent to the sales contract by accepting the check and transferring possession of the vehicle or whether the exchange between Hennessy and Gasore manifested a different understanding. Because a signature is the most common form of acceptance, a reasonable jury may conclude that the sales contract was never accepted by Secured, and that the transfer of possession from Secured to Gasore was meant as a test drive rather than a transfer of ownership.

And if Secured never completed the sales transaction, Gasore would be insured under the Policy. He could qualify as a garage customer because he was "using an auto owned, maintained or used in [Secured's] garage business." Policy at 46. He may also fall into the third category as he would be a person using an auto with Secured's permission. Further, the Policy states under "auto" coverage that Owners "will [] pay damages for bodily injury and property damage for which the insured becomes legally responsible because of or arising out of: (a) An auto . . . 1) Owned by you . . . ." *Id.* at 52. Therefore, Owners would be obligated to defend Gasore as an insured if Secured owned the vehicle at the time of the accident. Thus, there is a dispute of fact as to whether Gasore qualifies as an insured under the Policy.

**B.      Whether the Exception Applies to the State Tort Action**

Plaintiff next argues that even if Gasore is qualified as an insured under any of those categories, an exception in the Policy bars coverage for the tort action. Under the Policy, garage liability coverage does not apply to "[b]odily injury or property damage arising out of the ownership, maintenance, operation, [or] use . . . of any auto, possession of which you have transferred to another under an agreement of sale." *Id.* at 62. Plaintiff maintains that, even if Secured continued to own the vehicle, the Policy still excludes the underlying state action because *possession* of the vehicle was transferred under an agreement of sale.

But the exception still requires an agreement of sale. And the court already determined that a dispute of fact exists as to whether the agreement of sale was ever completed. The Policy exemption requires not only a transfer of possession, but a transfer of possession "under an agreement of sale." *Id.* Thus, there must be a valid agreement of sale for this exemption to apply. And whether a valid agreement exists is a dispute of fact.

## CONCLUSION AND ORDER

For the foregoing reasons, there remains a dispute of fact as to whether Owners has a duty to defend or indemnify Gasore in the underlying state court action under the Policy. Thus, Plaintiff's motion for summary judgment is **DENIED**. ECF No. 29.

DATED July 18, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge